UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-61576-CIV-MARRA

WHR HOLDINGS, LLC,

Appellant,

vs.

GEOFF & KRISTA SIMS
ENTERPRISES, INC.,

Appellee.
_____/

## OPINION AND ORDER

This cause is before the Court on the appeal by WHR HOLDINGS, LLC ("Appellants" "WHR") of the Order of Bankruptcy Judge John K. Olson, entered on April 26, 2011. The Court has carefully considered the appeal, the briefs of Appellants and GEOFF & KRISTA SIMS ENTERPRISES, INC. ("Appellee" "Sims"), the entire record on appeal, and is otherwise fully advised in the premises.

I.  Background

The facts, based upon the parties' respective statement of facts in their appellate briefs and the appellate record, are as follows:

On May 15, 2006, the Debtor, Wilkinson Hi-Rise, LLC ("Debtor" "Wilkinson"), filed a Chapter 11 Voluntary Petition. (Voluntary Petition, DE 2-4.) On that same day, the Debtor filed a motion for an order authorizing the sale to WHR of (1) substantially all of its assets pursuant to 11 U.S.C. § 363 free and clear of all liens, claims and encumbrances, and the assumption and/or assignment by the Debtor to WHR of (2) certain executory contracts and unexpired leases

pursuant to 11 U.S.C. § 365. (Motion for an Order authorizing the sale of substantially all of its assets pursuant to 11 U.S.C. § 363 free and clear of all liens, claims and encumbrances, and authorizing the assumption and/or assignment by the Debtor of certain executory contracts and unexpired leases pursuant to 11 U.S.C. § 365, DE 2-6.) Prior to the Bankruptcy Court granting the motion which approved the sale of assets to WHR (hereinafter, the "Sale Order"), the Debtor filed the May 15, 2006 Asset Purchase Agreement (hereinafter, "APA") with the Bankruptcy Court. (May 15, 2006 APA, DE 2-10; August 10, 2006 Sale Order, DE 2-15.)

Section 2.1 of the APA states in pertinent part:

2.1 Assets to be Sold.  Subject to Section 2.2, the other provisions in this Agreement and Approval Order, at Closing, Sellers shall sell, convey, assign, transfer, deliver to Buyer, and Buyer shall purchase, acquire, and accept from Sellers, the following assets and rights of Sellers as same are constituted on the Closing Date (collectively, the "Assets"):

. . .

(e) All executory contracts and agreements of Sellers pertaining to and necessary for the operation of the Business in the ordinary course, including, without limitation, the Customer Contracts (collectively, the Assumed Contracts) as set forth on Schedule 2.1(e) including all rights, demands, claims, actions and causes of action that Sellers may have under such Assumed Contracts, provided, however, that the Buyer may at any time prior to Closing elect (in its sole discretion) not to purchase and assume specific executory contracts and agreements;

. . .

2.2 Excluded Assets.  The Assets shall not include any of Sellers' rights, title or interests in or any assets or properties of Sellers that are not expressly enumerated in Section 2.1, including, without limitation, any of Sellers' rights, title or interests in or to any of the following (collectively, the "Excluded Assets"):

. . .

2.4 No Assumption of Liabilities.  Except for (i) the Cure Amounts, (ii) any and all post-closing obligations under the Assumed Contracts, the Equipment Leases and the Real Property Leases, (iii) the Assumed GECC Debt, and (iv) any ordinary course trade payables

incurred by the Debtor after the Petition Date that remain unpaid as of the Closing Date (collectively, the "Assumed Liabilities"), Buyer shall not assume, and shall be deemed not to have assumed, any Liabilities of Sellers other than the Assumed Liabilities (collectively, the "Excluded Liabilities"), including, but not limited to, those Liabilities set forth below:

(APA.)

On March 30, 2010, Sims filed a Demand for Arbitration against WHR with the American Arbitration Association. (Demand for Arbitration, DE 2-20.)  The arbitration claim was based upon a September 4, 2003 settlement agreement (hereinafter, "Settlement Agreement") between the Debtor and Sims, which resolved a 2002 federal trademark action. Included in the Settlement Agreement was a provision that Sims agreed not to sell trash chutes in the United States using the Wilkinson brand name, and the Debtor agreed not to sell trash chutes in Canada using the Wilkinson brand name.  (Settlement Agreement, DE 2-21.)

On August 24, 2010, WHR filed a motion to enforce the Sale Order. (DE 2-20.)  The Bankruptcy Court, on April 26, 2011, denied the motion and found that the Settlement Agreement was an executory contract pertaining to and necessary for the operation of the Debtor's business which was not excluded from the sale and therefore had been assumed by WHR.[1]  (DE 1.)

WHR seeks reversal of the Bankruptcy Court's April 26, 2011 Order.  In so moving, WHR contends that the Sale Order is enforceable against Sims because the Settlement

---

[1] Alternatively, the Bankruptcy Court found that even if the Settlement Agreement had not been assumed, the owner of a substantial minority interest in the buying entity was an insider of the Debtor and it would be inequitable to absolve the Debtor and WHR of responsibility for failing to inform Sims of the bankruptcy proceedings.  Therefore, the equitable remedy would be to require the parties to arbitrate their dispute under the terms of the Settlement Agreement. (DE 1.)

3

Agreement is not an assumed liability or assumed contract under the APA or Sale Order.[2]  In responding to this point, Sims contends the Bankruptcy Court correctly concluded that the Settlement Agreement was an executory contract that pertained to and was necessary to conduct the business.

## II. Legal Standard

The Court reviews the Bankruptcy Court's factual findings for clear error and its legal conclusions *de novo*. In re Globe Manufacturing Corp., 567 F.3d 1291, 1296 (11th Cir. 2009); In re Club Assoc., 951 F.2d 1223, 1228-29 (11th Cir. 1992).  An appellate court may affirm the lower court "where the judgment entered is correct on any legal ground regardless of the grounds addressed, adopted or rejected" by the lower court. Bonanni Ship Supply, Inc. v. United States, 959 F.2d 1558, 1561 (11th Cir. 1992).

## III. Discussion

Where a contract's terms are "clear and unambiguous, the 'language itself is the best evidence of the parties' intent and its plain meaning controls . . . .'" Pearson v. Caterpillar Fin. Servs. Corp., 60 So. 3d 1168, 1171 (Fla. Dist. Ct. App. 2011) (quoting Fecteau v. Se. Bank, N.A., 585 So. 2d 1005, 1007 (Fla. Dist. Ct. App. 1991)).  Where provisions of a contract are ambiguous and unclear on the face of the agreement, courts may consider evidence outside of the plain language for the purpose of determining the intent of the parties at the time of formation of the contract at issue. Gulf Cities Gas Corp. v. Tangelo Park Serv. Co., 253 So. 2d 744, 748 (Fla. Dist. Ct. App. 1971).

---

[2] The Court recognizes that WHR made several other arguments on appeal. However, given that the Court is construing the APA and the Sale Order as a matter of law, WHR's remaining arguments need not be addressed.

In reviewing a contract to determine its true meaning, the entire contract must be reviewed as a whole without fragmenting any segment or portion. Jones v. Warmack, 967 So. 2d 400, 402 (Fla. Dist. Ct. App. 2007). "All of the various provisions of a contract must be construed, if it can be reasonably done, as to give effect to each."  Paddock v. Bay Concrete Indus., 154 So.2d 313, 315 (Fla. Dist. Ct. App. 1963). "[I]f clauses in a contract appear to be repugnant to each other, they must be given such an interpretation and construction as will reconcile them if possible." Huntington v. Lemon Tree, 874 So.2d 1, 5 (Fla. Dist. Ct. App. 2004). "Words and phrases are given their common and ordinary meanings absent specific contractual definitions." Murley v. Wiedamann, 25 So. 3d 27, 29 (Fla. Dist. Ct. App. 2009) citing  Knott v. Revolution Software, Inc., 909 N.E.2d 702, 712 (Ohio Ct. App. 2009).

The Bankruptcy Court correctly concluded that the Settlement Agreement was an executory agreement that was pertaining to and necessary for the operation of the Debtor's business which was not excluded from the sale of assets.  Section 2.1 of the APA provides for the sale and conveyance of assets and rights from the buyer to the seller.  Section 2.1(e) further explains that those assets and rights include "[a]ll executory contracts and agreements of Sellers pertaining to and necessary for the operation of the Business in the ordinary course, including, without limitation, the Customer Contracts (collectively, the "Assumed Contracts") as set forth on Schedule 2.1(e). . ."  Section 2.2 of the APA defines the "excluded assets" that were not transferred.

Clearly, the Settlement Agreement pertained to and was necessary for the operation of the business.  The Settlement Agreement limited the parties' geographic areas of sales in order that confusion would be avoided with respect to the source of chutes that bear the trademark at issue.

Although section 2.1(e) makes reference to the contracts on Schedule 2.1(e), the wording in section 2.1(e) does not limit the contracts and agreements to those listed on Schedule 2.1(e). This is evidenced by the term "including, without limitation." Any other interpretation would render the phrase "including, without limitation" meaningless. See Excelsior Ins. Co. v. Pomona Park Bar & Package Store, 369 So. 2d 938, 941 (Fla. 1979) ("Every provision in a contract should be given meaning and effect and apparent inconsistencies reconciled if possible"). The fact that the Settlement Agreement is not included on the list of "Excluded Assets" also supports the finding that the Settlement Agreement was included as an obligation assumed by WHR. See section 2.2 of the APA.

The Court rejects WHR's arguments which highlight minor differences in wording throughout the various provisions of section 2.1 as evidence that the Settlement Agreement was not assumed. Compare section 2.1(c) and 2.1(d) with 2.1(e). Equally unpersuasive is WHR's claim that sections 2.1(a)-(c) are rendered superfluous under the Court's interpretation of section 2.1(e). While the use of this language may not have necessary, it does not change the meaning and import of the term "including, without limitation" contained in section 2.1(e). If anything, the inclusion of 2.1(a)-(c) serves to eliminate ambiguity as to what assets were transferred. Finally, section 2.4 of the APA provides that there is no assumption of liabilities *except* for "any and all post-closing obligations under the Assumed Contracts," which, as discussed supra, includes the Settlement Agreement.

For the foregoing reasons, the Court finds that the Bankruptcy Court did not err in denying the Motion to Enforce the Sale Order.

IV.  Conclusion

Based upon the foregoing, it is **ORDERED AND ADJUDGED** that the decision on appeal of Bankruptcy Judge John K. Olson is **AFFIRMED**.  This case is **CLOSED**, and all pending motions are **DENIED** as moot.

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 18th day of November, 2011.

_____
KENNETH A. MARRA
United States District Judge